**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**GREGORY KENT HOWARD,**

     **Plaintiff,**

**v.**                                       **Civil Action No. 3:09-00823**

**MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,**

     **Defendant.**

**MEMORANDUM OPINION**

     This is an action seeking review of the decision of the Commissioner of Social Security (hereinafter the "Commissioner") denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. (Docket No. 1). Both parties have consented in writing to a decision by the United States Magistrate Judge. (Docket Nos. 4 and 5). The case is presently pending before the Court on the parties' cross motions for judgment on the pleadings as articulated in their briefs. (Docket Nos. 8 and 11).

**I.**    **Procedural History**

     Plaintiff, Gregory Kent Howard (hereinafter "Claimant"), filed applications for DIB and SSI on August 3, 2006, alleging disability beginning November 1, 2004 due to anxiety; post traumatic stress disorder; sleep disorder; bone disease; Morton's neuroma;

1

tendonitis; and arthritis in his knees and feet.[1] (Tr. at 83-88, 89-91, and 112).   The claims were denied initially and upon reconsideration. (Tr. at 49-53 and 60-62). Thereafter, Claimant requested an administrative hearing. (Tr. at 63). The hearing was held on February 22, 2008 before the Honorable Andrew J. Chwalibog, Administrative Law Judge (hereinafter the "ALJ). (Tr. at 17-46). By decision dated April 28, 2008, the ALJ determined that Claimant was not under a disability as defined by the Social Security Act. (Tr. at 6-16).

The ALJ's decision became the final decision of the Commissioner on June 5, 2009 when the Appeals Council denied Claimant's request for review. (Tr. at 1-4). ). On July 20, 2009, Claimant brought the present civil action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Docket No. 1). The Commissioner has filed an Answer and a Transcript of the Administrative Proceedings, and both parties have filed their Briefs in Support of Judgment on the Pleadings. (Docket Nos. 6, 7, 8 and 11). The matter is, therefore, ripe for resolution.

## II.   Summary of the ALJ's Decision

Under 42 U.S.C. § 423(d) (5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months" 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations establish a "sequential evaluation" for the

---

[1] He also complained at the administrative hearing of disability due to gastric complaints, including gastroesophageal reflux disorder ("GERD") and a hiatal hernia.  (Tr. at 11, 33).

adjudication of disability claims. 20 C.F.R. §§ 404.1520 and 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. § *Id.* §§ 404.1520(a) and 416.920(a).

The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b) and 416.920(b). If the claimant is not engaged in substantial gainful employment, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c) and 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d) and 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e) and 416.920(e).

By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific

job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review." 20 C.F.R. § 404.1520a. First, the SSA evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. If such impairment exists, the SSA documents its findings. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c).  Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines the severity of the limitation. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning, and concentration, persistence or pace) and "none" in the fourth (episodes of decompensation) will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the SSA compares the supportive medical findings, along with the impairment's rating, degree, and attendant functional limitations, to the criteria of the most similar listed mental disorder to determine if the severe impairment meets or equals the listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520a(d)(3).

In this particular case, the ALJ determined that Claimant had not engaged in substantial gainful activity since November 1, 2004, the alleged disability onset date, and that he met the insured status requirements of the Social Security Act through December 31, 2009. (Tr. at 11, Finding Nos. 2 and 1). Under the second inquiry, the ALJ found that Claimant had a severe impairment of Morton's neuroma of the right foot. (Tr. at 11, Finding No. 3). At the third inquiry, the ALJ concluded that Claimant's impairments, alone or in combination, did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 13, Finding No. 4). The ALJ then found that Claimant had the residual functional capacity (hereinafter "RFC") to perform "light work" as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except that he was limited by the following:

> [H]e can only stand/walk for six hours out of an eight-hour day; sit six hours out of an eight-hour day; he can only occasionally climb, balance, stoop, kneel, crouch, or crawl; he should avoid concentrated exposure to temperature extremes and vibrations; he requires the option to sit and stand at will and use a can[e] for ambulation; further, the claimant is limited to routine tasks with limited contact with the public.

(Tr. at 13, Finding No. 5).

As a result, the ALJ found that Claimant could not return to his past relevant employment as a postal carrier, an aircraft mechanic for the United States Air Force, or a distribution supervisor. (Tr. at 15, Finding No. 6). The ALJ considered that Claimant (1) was 43 years old on the alleged disability onset date, which is defined as a younger individual aged 18-49, (2) had a high school education, and (3) could communicate in English; therefore, transferability of job skills was not material to the disability

determination.[2] (Tr. at 15, Finding Nos. 7-9). Based on the testimony of the vocational expert, the ALJ found that Claimant could make a successful adjustment to other work that exists in significant numbers in the national economy, such as office helper and price marker. (Tr. at 16, Finding No. 10). Therefore, the ALJ concluded that Claimant was not disabled and, thus, was not entitled to benefits. (Tr. at 16).

## III.   <u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying Claimant's applications for benefits is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as the following:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972), quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  Consequently, the decision for the Court to make is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart,* 434 F. 3d 650,653 (4th Cir. 2005), citing *Craig v. Chater,* 76 F.3d585, 589 (4th Cir. 2001).

Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court will not re-weigh conflicting evidence or substitute its judgment for that of the Commissioner. *Id.* However, the Court must not "escape [its] duty to scrutinize the

---

[2] The Medical-Vocational Rules supported a finding that Claimant was not disabled regardless of whether he had transferable job skills.

record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The ultimate question for the Court is whether the decision of the Commissioner is well-grounded, bearing in mind that "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner]." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

## IV.   **Claimant's Background**

Claimant was 46 years old at the time of his administrative hearing. (Tr. at 21). He had a high school degree and completed "a couple of college classes" while serving in the military. (Tr. at 22). He served as an aircraft mechanic for the United States Air Force from 1980 until 1992 when he was honorably discharged.  He then worked as a part-time substitute school bus driver for approximately sixteen months.  His final employment was with the United States Postal Service as a postal carrier from 1994 until approximately 2000 when he was promoted to distribution supervisor, the position that he held until his alleged disability onset date. (Tr. at 23-24).

## V.   **The Medical Record**

The Court has reviewed the record in its entirety and will briefly summarize the pertinent medical records below. However, the records which do not relate to the relevant time period of November 1, 2004 (the date of Claimant's alleged disability onset) through April 28, 2008 (the date of the ALJ's decision) are generally omitted

from the discussion with the exception of those that are necessary to establish Claimant's medical background.

According to Claimant's health care summary completed at the Veterans Administration Medical Center at Huntington, West Virginia (hereinafter "VAMC"), prior to Claimant's alleged disability onset, from 1995 through 1997, Claimant underwent four surgeries to remove neuromas from his right foot between the first and second metatarsal heads.  In 2003, he underwent surgery to elevate the second metatarsal head.[3] (Tr. at 608). Claimant stated that he believed that his foot pain began "in the early 1990's" when he "had to do a lot of standing on ladders, 10-12 hours per day" while serving in the military as an aircraft mechanic. (Tr. at 605-606).

Also according to Claimant's VAMC health summary, he was seen by Michael Lupashunski, a VAMC podiatrist, on October 29, 2004 regarding his right foot pain, which was assessed as neuropathic pain. (Tr. at 621). At that time, Dr. Lupashunski prescribed Anodyne therapy[4] for a course of twelve weeks, placed Claimant on 100% disability from the post office for the next thirty days, and planned to follow up with Claimant on a monthly basis. (Tr. at 621-622). Dr. Lupashunski followed up with Claimant on November 19, 2004, but noted no new findings, as Claimant had not yet begun his Anodyne treatments. (Tr. at 622).

---

[3] According to Claimant, he underwent a total of six foot surgeries. (Tr. at 26). The final surgery likely occurred subsequent to the most recent health summary included in the file, which was printed on August 11, 2006. (Tr. at 608).

[4] Anodyne© Therapy is the use of an infrared light device that is applied directly to the skin over the affected area, causing blood vessels to dilate; thus, increasing circulation and reducing pain, stiffness, and muscle spasms.  www.anodynetherapy.com.

8

During the period of November 29, 2004 through March 16, 2005, Claimant was treated by Melissa Lemons, P.T., at Huntington Physical Therapy, for his complaints of "burning type pain in both feet." (Tr. at 517). He rated his pain as a 2-3/10 on the left side and 8-9/10 on the right side. Claimant received physical therapy and Anodyne infrared therapy treatments, bilaterally, over the course of thirty-six visits, but he denied receiving any benefit from these therapies. Claimant was discharged from physical therapy on March 16, 2005, with only minimal improvement in sensation on the plantar aspects of both feet. (*Id.*). Claimant again reported that the Anodyne treatments were not working as well as expected during a follow-up visit with Dr. Lupashunski on January 6, 2005. (Tr. at 621).

On February 16, 2005, during a routine examination, Joseph Justice, D.O., from Huntington Internal Medicine Group (hereinafter "HIMG"), assessed Claimant with "Morton's Neuroma (chronic pain), (2) Hyperlipidemia, (3) Anxiety/Depression."[5] (Tr. at 513). Two weeks later, on March 1, 2005, Claimant was evaluated by VAMC staff physician Gene L. Duncan regarding his right foot pain. (Tr. at 621). Dr. Duncan stated that Claimant could return to work on March 21, 2005 with work restrictions of no walking or standing for more than five minutes and that he should perform only sedentary work. *Id.*

In August 2005, Dr. Lupashunski discussed with Claimant treatment options for his chronic foot pain. (Tr. at 606). Claimant expressed a desire to stop taking narcotics, so Dr. Lupashunski prescribed gabapentin (neurontin), which is an anti-convulsant used to treat postherpetic neuralgia. (*Id.*). At a follow-up visit on November 28, 2005,

[5] This discussion omits Dr. Justice's records which pre-date Claimant's alleged onset date.

Claimant reported some improvement with gabapentin, but still asked Dr. Lupashunski to amputate his right fore foot.  (Tr. at 595-596).  Instead, Dr. Lupashunski ordered non weight-bearing x-rays of Claimant's feet and x-rays of his ankle, which were performed in December 2005.  The x-rays of the feet revealed the presence of an orthopedic screw that had been placed in Claimant's right foot during one of his prior surgery, but were absent of any findings of bony abnormalities or significant focal degenerative changes in either foot. (Tr. at 628).   The ankle x-rays likewise were normal, without evidence of bone abnormalities, fractures, dislocations, or degenerative changes.  (Tr. at 628-629). X-rays taken in January 2006 of Claimant's pelvis and hips similarly revealed no discrete abnormalities.  (tr. at 624-625).

On January 18, 2006, Claimant underwent an "upper GI series" at the VAMC to evaluate abdominal pain, with the following results:

> Scout film of the abdomen is unremarkable. The patient was evaluated in both upright and supine positions. A double contrast study was performed. The esophagus exhibited normal course, contour, and distensibility. Minimal sliding hiatal hernia was demonstrated with Valsalva maneuver. Intermittent mild gastroesophageal reflux was noted supine. The stomach, duodenal bulb, and duodenal sweep had normal appearance.
>
> Impression:
>
> 1. Minimal sliding hiatal hernia was demonstrated with Valsalva maneuver. Mild gastroesophageal reflux was noted in the supine position.
> 2. No dysmotility was demonstrated.
> 3. No constricting or obstructing lesions or ulcerative lesions were identified.

(Tr. at 624).

On February 28, 2006, Dr. Lupashunski placed Claimant "on 100% disability for

the next 30 days" due to "unremitting pain in his foot."[6] (Tr. at 199). Dr. Lupashunski ordered a new course of treatment, "Tens unit therapy," and "bedrest" and planned to see Claimant "monthly to follow his progress." (*Id.*).  He also increased Claimant's neurontin.  (Tr. at 592).

On March 2, 2006, Zandra King, a social worker at the VAMC, assessed Claimant to suffer from a mood disorder due to a medical condition and scheduled him for an intake with a depression team. (Tr. at 300-301).   She noted, "Veteran sits at home and does nothing.  He would like to be able to go back to work, but does not know if that is possible with his physical problems."  (*Id.*). However, the following day, Claimant stated during a checkup with Dr. Justice that he was "feeling great" and only needed a refill of his medications. (Tr. at 510).

On March 7, 2006, the VAMC provided Claimant with a cane and gait training therapy. (Tr. at 248). On the same date, Claimant was screened for depression, as was previously ordered on March 2, 2006, and was diagnosed with depression, based on his difficulty with sleep, energy, and concentration; his feelings of sadness, hopelessness, and anger; and his variance in appetite. (Tr. at 298).

On March 13, 2006, Claimant was given a psychosocial assessment by Michael David Clay, a Licensed Professional Counselor ("L.P.C.") at The Word House, Inc. Psychological and Counseling Services. (Tr. at 564-573). Mr. Clay diagnosed Claimant with depressive disorder, NOS; posttraumatic stress disorder ("PTSD"), chronic, delayed onset; and noted that he needed to rule out panic disorder without agoraphobia. (Tr. at 572).

---

[6] Claimant was seen for foot pain various times in 2005. (Tr. at 305, 315-316, 330, 331).

On May 4, 2006, Claimant was given a comprehensive mental health evaluation by Julia Lizska, Ph.D., at the VAMC. (Tr. at 583-588). Claimant's chief complaints were depression secondary to PTSD from his military deployment in Grenada and chronic pain of 5 on a 10 point scale. (Tr. at 583). Claimant reported that his current pain level was a 4- 5 on a 10 point scale. (Tr. at 584).

On September 1, 2006, Dr. Justice assessed Claimant's conditions as "stable" during a routine follow-up appointment. (Tr. at 511).  On the same date, Bob Marinelli, Ed.D., an agency consultant, completed a psychiatric review technique form, finding that Claimant suffered from non-severe mood and anxiety disorders, which rendered him mildly restricted in "activities of daily living;" "maintaining social functioning;" and "maintaining concentration, persistence or pace."  (Tr. at 634, 636, and 641). Claimant had no "episodes of decompensation." (Tr. at 641).

On September 27, 2006, Stephen B. Nutter, M.D., of Tri-State Occupational Medicine, completed a consultative examination at the request of the West Virginia Disability Determination Section ("DDS"), to evaluate Claimant's complaints of right foot, right ankle, right knee and right hip problems.  (Tr. at 647-653).  After completing a thorough evaluation, Dr. Nutter recorded his impressions as the following:

1. Metatarsalgia secondary to recurrent neuroma in the right foot's first and second interspace
2. Artralgia
3. Chronic lumbar strain

(Tr. at 652). His summary stated the following:

The claimant reports problems with joint pain. As noted above, there is joint pain and tenderness. There is no synovial thickening, periarticular swelling, nodules or contractures consistent with rheumatoid arthritis.

12

> The claimant reports problems with his back. There are range of motion abnormalities of the lumbar spine as noted above. Straight leg raise test is negative. There are no sensory abnormalities. Reflexes are normal. Muscle strength testing is normal. These findings are not consistent with nerve root compression.

(Tr. at 652-653). An x-ray of Claimant's right foot showed his surgical screw, but noted that the bones were "otherwise unremarkable," that the "joint space was well maintained," and that he had a "tiny degenerative plantar spur." (Tr. at 654).

On October 2, 2007, Dr. Justice from HIMG followed-up with Claimant, finding that his "osteoarthritis of the ankle/foot (multiple joints) [was] tolerable with current meds, no new trauma, [and that Claimant] does some work around the house and it goes well most of the time." (Tr. at 742).

On October 23, 2006, Mandy Redbrook, an agency consultant, completed a physical RFC assessment, noting the following:

- Claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk and sit with normal breaks for about 6 hours in an 8-hour workday; and push and/or pull an unlimited amount, other than as shown for lift and/or carry.

- Claimant could occasionally climb ramps/stairs/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl.

- Claimant had no manipulative, visual, or communicative limitations.

- Claimant need not avoid exposure to wetness, humidity, noise, fumes, or hazards, but should avoid concentrated exposure to extreme heat and cold and vibration.

(Tr. at 654-659). Ms. Redbrook stated the following regarding Claimant's symptoms:

> Claimant's allegations are partially supported by the evidence in file. The claimant used a cane at the [consultative examination] but it is not necessary for ambulation. He had 5/5 motor grip strength. His [range of motion] is very slightly limited. The claimant does all housecleaning, his own laundry, and all yard work. RFC reduced to light.

13

(Tr. at 660). There was not a treating or examining source statement in the file. (Tr. at 661).

On November 8, 2006, the Department of Veterans Affairs notified Claimant that it granted "entitlement to the 100% rate effective January 24, 2005" because the agency found that Claimant was unable to work due to his service connected disabilities. (Tr. at 668). The agency determined that Claimant suffered from the following impairments, which rendered him disabled according to the following percentages:

| | |
|---|---|
| Hiatal hernia with gastroesophogeal reflux | 30% disabling |
| Tinnitus | 10% disabling |
| Morton's neuroma with hallax vaigus of the right foot, status post intermetatarsal | 10% disabling |
| chondromalacia, right patella (claimed as right knee condition secondary to service-connected Morton's neuroma) | 10% disabling |
| Enthesis Achilles tendon (claimed as right ankle condition secondary to service-connected right foot) | 10% disabling |
| Hallux valgus, left | 10% disabling |

(Tr. at 667-668).

On December 13, 2006, Jim Capage, Ph.D., an agency consultant, reviewed the evidence of record and affirmed Dr. Marinelli's September 1, 2006 psychiatric review technique. (Tr. at 674). Similarly, on January 4, 2007, Fulvio Franyutti, M.D., another agency consultant, reviewed the evidence of record and affirmed Ms. Redbrook's October 23, 2006 physical RFC assessment.

On February 28, 2007, Claimant reported that pain in his foot and knee was a "5" on the numeric pain scale and that it was intermittent. (Tr. at 697).

## VI.   Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ erred in (1) finding that Claimant was not disabled contrary to the weight of the medical evidence, (2) assessing that Claimant was not fully credible, and (3) posing an improper hypothetical to the vocational expert.   (Pl.'s Br. at 5-8).

The Commissioner responds that substantial evidence supports the ALJ's determination that Claimant was not disabled, nor fully credible, and that the hypothetical was proper.   (Def.'s Br. at 9-14).

## VII.   Discussion

### A.   Disability Finding

Claimant argues that "the weight of the medical evidence is sufficient to prove that [he] is disabled." (Pl.'s Br. at 5). He summarily concludes that "[o]bviously, [his] physical and mental impairments in combination equal a Listed Impairment" and that a "fair review of the evidence and thoughtful consideration of [his impairments] demands such a conclusion and is supported by substantial evidence." *Id*. He further argues that "it is apparent that no amount of evidence would have convinced the Administrative Law Judge that [he] is disabled." (Pl.'s Br. at 5-6).

The Court finds Claimant's argument unpersuasive.   The ultimate decision of whether a claimant is disabled rests with the Commissioner.   20 C.F.R. §§ 416.927(e)(1) and 404.1527(e)(1). The Court's role in reviewing the ALJ's decision is to determine whether it is supported by substantial evidence, as discussed in Part III *supra*. Here, the

ALJ properly applied the sequential evaluation and his determination at each step, as well as his ultimate conclusion that Claimant was not disabled, is supported by substantial evidence.

At the second step of the sequential evaluation, the ALJ determined that Claimant suffered from the severe impairment of Morton's neuroma of the right foot. (Tr. at 11, Finding No. 3). The ALJ thoroughly considered Claimant's other alleged impairments, including performing the special technique to assess Claimant's alleged mental impairments, and determined that none of them were severe. *Id*. The medical record corroborates these findings, as discussed below.

Pursuant to Social Security Ruling (SSR) 85-28, an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28.  Claimant alleges that he is prevented from working due to pain in his feet, knee, hip, and lower back (Tr. at 25), as well as ankylosis (joint stiffness) in his right ankle and knee, which he states caused his knee cap to pop out of place "twice over the last three or four years." (Tr. at 34). Claimant reported right ankle pain to his doctors at VAMC, but an x-ray taken on June 17, 2004, showed no abnormalities and was deemed a "negative exam." (Tr. at 209). In addition, bilateral views of both of his ankles were taken at VAMC on December 15, 2005 and no acute or significant focal bony abnormalities were found, nor were there any significant degenerative changes. (Tr. at 206). Similarly, x-rays of his knees taken at VAMC on January 5, 2006 at VAMC showed "very mild narrowing in the medial compartments bilaterally," but there were no fractures, dislocation, or joint effusion. (Tr. at 204). X-rays of his pelvis taken the same

16

day showed that the "joint spaces were grossly preserved" and the impression was "[n]o discrete abnormality." (Tr. at 205). There is "no known cause" of Claimant's alleged back pain. (Tr. at 650). He does exhibit some range of motion limitations of his lumbar spine, but a straight leg test was negative, he had no sensory abnormalities, his reflexes and muscle strength were normal, and there was no evidence of nerve root compression. (Tr. at 652-653).

As summarized above, the record substantially supports the ALJ's determination that Claimant's ankles, knees, hips, and back conditions have no more than a minimal negative impact on his ability to work. The medical evidence, in corroboration with Claimant's testimony, indicates that these conditions are generally secondary to Claimant's foot impairment and are greatly alleviated by pain medication and limited walking or standing. The scarcity of medical records and documented complaints regarding these alleged impairments lends support to the ALJ's conclusion.

Claimant also testified during the administrative hearing that he suffers from gastric conditions, including a hiatal hernia. (Tr. at 33). However, Claimant only mentioned this impairment in response to prompting from his attorney and not when asked what conditions prevent him from working. (Tr. at. 33; *see* Tr. at. 25). The medical evidence substantiates that Claimant's gastric impairments are minimal and do not limit his ability to work. According to the results of the upper GI series performed at the VAMC, Claimant suffers from a "[m]inimal sliding hiatal hernia," but "[n]o dysmotility was demonstrated" and he had no "constricting or obstructing lesions or ulcerative lesions." (Tr. at 624).  Intermittent GERD was also noted, but only when Claimant was in the supine position, and it was described as "mild."  (*Id.*).

17

Finally, Claimant asserts a variety of mental impairments, including anxiety, a mood disorder, a sleep disorder, posttraumatic stress disorder, depression, and memory problems. (Tr. at 26, 34, and 38). In his decision, the ALJ thoroughly scrutinizied Claimant's alleged mental impairments, applying the special technique as required, 20 C.F.R. §§ 404.1520a(a) and 416.920a(a), and properly documenting the process, 20 C.F.R. § 404-1520a(e). (Tr. at 12-13). The ALJ's analysis fully comports with the applicable regulations and is supported by substantial medical evidence. The record reflects a positive trend in the management of Claimant's alleged mental impairments through medication such that the conditions pose no more than a minimal barrier to his ability to work. (*See, e.g.*, Tr. at 586-588, 745, 750). As the ALJ pointed out in his decision, Claimant generally attends to his own activities of daily living, seeking only occasional help from his family members; he shoots pool a couple times each week and attends church services about once a month; he has had no episodes of decompensation or deterioration in work or work-like settings. (Tr. at 12-13). In addition, Claimant has no problem socializing with others after church services; he speaks daily with his brother, sister, or children and 3 or 4 times each week with his mother; he does his own shopping; pays his bills; and has hobbies such as woodworking and building model cars. (*See, e.g.*, Tr. at 12, 31, 40, 123, 129-130). All of these activities support the conclusions reached by the agency consultants, who found that Claimant's mental impairments were not severe. (Tr. at 631-644, 674). The ALJ explicitly noted that he adopted the findings of the agency consultants, because he did not believe that the evidence substantiated the presence of severe mental impairments with attendant functional limitations that significantly restricted Claimant's ability to perform basic work activities. (Tr. at 12).

18

Therefore, the ALJ's finding that only Claimant's Morton's neuroma, and not his other alleged physical or mental conditions, was a severe impairment is supported by substantial evidence.  Moreover, by making a finding that Claimant's neuroma was a severe impairment, Claimant's case proceeded to the next steps of the sequential evaluation, at which all of his impairments, both severe and non-severe, were considered in determining his ability to perform substantial gainful activities.

Clearly, the ALJ considered Claimant's substantiated mental impairments in crafting an RFC that reflected and accommodated them.  Claimant testified during the administrative hearing that what prevents him from working is pain in his feet, knee, hip, and lower back. (Tr. at 25). However, he elaborated that what really causes his pain is "walking." (Tr. at 27). He stated that his most recent position, distribution supervisor at the post office, was a "desk job" (Tr. at 36) designated as "light" level position by the vocational expert. (Tr. at 43). When asked by his attorney what prevented him performing this position, he no longer mentioned physical impairments, but stated that he suffered from "anxiety" as a result of the personal contact involved and the stress of the job. (Tr. at 37).   He explained that " it just seemed like every time I turned around it was something blowing up here and something blowing up there. . . ."  The ALJ clearly took these factors into account in determining Claimant's RFC to include "light" level work with the additional restrictions of "routine tasks with limited contact with the public." (Tr. at 13, Finding No. 5).

Claimant further complains that the ALJ did not find Claimant's multiple impairments, in combination, to medically equal a listed impairment, arguing that thoughtful consideration of his impairments "demands such a conclusion."  However, as

19

the Commissioner emphasizes in his brief, Claimant "does not specify which of the listed impairments he believes himself to equal." (Def. Br. at 9). Certainly, if specific listings were relevant to Claimant's case, and were as indisputably matched as he contends, it is reasonable to expect that Claimant would identify those listings in his brief. Claimant did not do so. (Pl.'s Br. at 5). The Court finds the Commissioner's argument is persuasive and does not find evidence that suggests an issue pertinent to any particular listing or listings.

In any event, the finding that Claimant's mental and physical conditions did not medically equal a listed impairment was not fatal to the claimant's disability determination. The ALJ clearly considered all of the functional limitations suffered by Claimant when framing his RFC. "RFC represents the most that an individual can do despite his or her limitations or restrictions." *See* Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all of the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a) and 416.945(a) (2008). The RFC determination is an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2008).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

*Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

The ALJ's RFC finding is fully consistent with Ms. Redbrook's October 23, 2006 evaluation, which was corroborated by Dr. Franyutti on January 4, 2007. In addition, as

previously noted, the ALJ's RFC finding incorporates Claimant's psychiatric impairments. The RFC is consistent with the objective medical evidence of record and the Court finds that it is supported by substantial evidence. The ALJ's RFC finding (Tr. at 13, Finding No. 5) and the hypothetical question that he posed to the vocational expert (Tr. 43-44) confirm that the ALJ took into account Claimant's severe and non-severe impairments and their resulting limitations, separately and in combination. In fact, the Claimant's RFC was appreciably constrained; Claimant could perform only "light work," which was further limited by the following:

> [H]e can only stand/walk for six hours out of an eight-hour day; sit six hours out of an eight-hour day; he can only occasionally climb, balance, stoop, kneel, crouch, or crawl; he should avoid concentrated exposure to temperature extremes and vibrations; he requires the option to sit and stand at will and use a can[e] for ambulation; further, the claimant is limited to routine tasks with limited contact with the public.

(Tr. at 13, Finding No. 5). The ALJ posed this RFC in a hypothetical addressed to the vocational expert during the administrative hearing. The vocational expert responded that someone with these significant limitations could perform only certain light level occupations. (Tr. at 44).

At the final steps of the sequential analysis, the ALJ relied on the vocational expert's testimony in finding that Claimant could not return to his past relevant employment, but that he could adjust to other employment which exists in significant numbers in the national economy. (Tr. at 15, Finding Nos. 6-11). The Court finds that these conclusions are supported by substantial evidence. The Court disagrees with Claimant's assertion that the ALJ posed an improper hypothetical to the vocational expert and that his reliance on the expert's response was improper. As this argument

pertains to Claimant's third assertion of error, the Court discusses the issue more fully in section C *infra*.

The Court finds that the ALJ's determination that Claimant was not disabled is supported by substantial evidence.

### B.    Credibility Assessment

Claimant asserts as a second error that the ALJ "blatantly disregarded the objective evidence of record" in finding that Claimant was not fully credible and that "his testimony is entitled to full credibility because his exertional and non-exertional impairments are disabling in nature." (Pl.'s Br. at 6).

Social Security Ruling 96-7p clarifies the two-step process by which the ALJ must evaluate symptoms, including pain, under 20 C.F.R. §§ 404.1529 and 416.929, to determine their limiting effect on a claimant.  First, the ALJ must establish whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's symptoms, including pain.  SSR 96-7P.  Once the ALJ finds that the conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id.* Whenever the intensity, persistence or severity of the symptoms cannot be established by objective medical evidence, the ALJ must make a finding of the credibility of any statements by a claimant used to support the symptoms' disabling effect. The Ruling sets forth the factors that the ALJ must consider in assessing the claimant's credibility, emphasizing the importance of explaining the reasons supporting the credibility determination. The Ruling further directs that the

credibility determination must be based on a consideration of all of the evidence in the case record. *Id.*

In this case, the ALJ accepted that Claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms; thus, the ALJ evaluated the intensity, persistence, and limiting effects of Claimant's symptoms to determine the extent to which they prevented him from working. The ALJ found that Claimant's statements concerning the intensity, persistence, and severity of his symptoms were exaggerated and only fairly credible, because they were inconsistent with other evidence in the record, including descriptions of Claimant's daily activities and the documented intensity of Claimant's pain. (Tr. at 14-15). The ALJ cited to specific pieces of evidence contained in the record that caused the ALJ to question Claimant's credibility.   (*Id.*).   For example, the ALJ referred to Claimant's testimony at the administrative hearing in which he reported his pain to be 6-7/10, while the treatment notes from the VAMC documented his pain to range around 0-4/10.   (Tr. at 14).   In addition, the record documented that Claimant could attend to his personal needs, do much of his own housework, and socialize with others.  (*Id.*)

When evaluating whether an ALJ's credibility determinations are supported by substantial evidence, the Court is not charged with simply replacing its own credibility assessments for those of the ALJ; rather, the Court must review the evidence to determine if it is sufficient to support the ALJ's conclusions. "In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence . . . or substitute its own judgment for that of the Commissioner." *See Hays v. Sullivan,* 907 F.2d. 1453, 1456 (4th Cir. 1990).  Because the ALJ had the "opportunity to observe the demeanor

and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989-990 (4th Cir. 1984), citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D.Va. 1976).

Here, the Court finds that the ALJ's credibility assessment of Claimant was consistent with the applicable regulation, case law, and Social Security Rulings and was supported by substantial evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence existed in the record that Claimant's complaints of pain did not necessarily correlate with his level of activity. Although he states that he "cannot do anything that [he] used to do" (Tr. at 30), he has no trouble attending to personal needs (Tr. at 30 and 127); doing most of the housework and cooking (Tr. at 31 and 128); living alone (Tr. at 123); and shopping for household goods, food, clothes, and personal hygiene items (Tr. at 129). Further, on June 13, 2007 and October 2, 2007, Claimant reported to Dr. Justice that his physical and mental conditions were well-controlled with current medications, that he had no new trauma, and that he did some work around the house, which "goes well most of the time." (Tr. at 745 and 742). Although Claimant complains of excessive pain in general, the record indicates that at most, his pain levels corresponded to increased physical activity. (*See, e.g.,* Tr. at 751). It is illustrative that Claimant did not report experiencing any physical pain when performing a light-level job at the post office. (Tr. at 37).

Also, Claimant argues that in assessing his credibility, the ALJ should have considered and discussed the Veteran's Administration disability finding, the fact that Claimant received Federal Workers' Compensation benefits, and his retirement from the

United States Postal Service. (Pl.'s Br. at 8). On this note, the Court refers Claimant to 20 C.F.R. 404.1504, which states that in determining eligibility for social security benefits:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. 404.1504. The ALJ properly chose not to discuss the findings of other agencies, as they were based on different standards and had no bearing on the ALJ's determination in accordance with the applicable social security regulations.

Considering all of the objective and testimonial evidence available, the ALJ determined that "to the extent claimant believes he is unable to perform any work activity on a sustained basis, I reject such a conclusion as unsupported by the medical evidence" and further stated that "claimant retains the [RFC] to perform light level work with the non-exertional limitations as stated." (Tr. at 15, Finding No. 5). The Court finds that the ALJ's credibility determination and RFC finding were supported by substantial evidence.

### C.    Hypothetical Posed to the Vocational Expert

Finally, Claimant argues that the ALJ "erred when he posed a hypothetical question to the Vocational Expert which reflected that [Claimant] can stand/walk/sit six hours out of an eight-hour day," which Claimant argues "is ludicrous in light of [Claimant's] difficulties with his feet and back, the pain attendant thereto, and the fact that he was only allowed to walk ten (10) minutes in an eight (8) hour day during his shift with the United States Postal Service." (Pl.'s Br. at 8).

It is well established that for a vocational expert's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. *Walker v. Bowen,* 889 F.2d 47, 50-51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular Claimant's impairments and abilities-presumably, he must study the evidence of record to reach the necessary level of familiarity." *Id.* at 51. While questions posed to the vocational expert must fairly set out all of the claimant's impairments, the question need only reflect those impairments supported by the record. *See Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3rd Cir. 1987). Finally, the hypothetical question may omit non-severe impairments, but must include those that the ALJ finds to be severe. *Benenate v. Schweiker,* 719 F.2d 291, 292 (8th Cir. 1983).

As discussed, the Court finds that the ALJ's credibility and RFC findings are supported by substantial evidence. The Court further finds that the hypothetical, which fully incorporated and paralleled the ALJ's RFC finding, is supported by substantial evidence as well. Contrary to Claimant's allegation, the limitations imposed by the Postal Service are irrelevant to the ALJ's findings. The hypothetical posed to the vocational expert, and as stated into the RFC finding, reflected light level work with additional restrictions, including the option to sit and stand at will, to use a cane for ambulation, and to only perform routine tasks with limited contact with the public. (Tr. at 44 and 13, Finding No. 5).  This hypothetical accurately reflects the medical records, as well as Claimant's testimony that he experienced only mental impairments, specifically "anxiety," not physical impairments, when performing a light level position. The hypothetical and RFC finding indicate that although the ALJ discounted Claimant's

26

statements of intensity and persistence of symptoms, the ALJ fairly accommodated Claimant's alleged impairments and complaints to the extent that they were supported by the record. In light of all of the information before the Court, the ALJ posed a proper hypothetical to the vocational expert.

## VIII. **Conclusion**

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision **IS** supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to transmit copies of this Order to all counsel of record.

**ENTERED:** January 10, 2011.

Cheryl A.  Eifert
United States Magistrate Judge